1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY PINSON,<br><br>       Plaintiff,<br><br>   v.<br><br>FEDERAL BUREAU OF PRISONS, et al.,<br><br>     Defendants. | Case No.  1:13-cv-1821-AWI-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO:**<br><br>**(1) GRANT DEFENDANT'S REQUEST FOR JUDICIAL NOTICE (ECF No. 24);**<br><br>**(2) DENY DEFENDANT'S MOTION TO REVOKE PLAINTIFF'S IN FORMA PAUPERIS STATUS (ECF No. 24);**<br><br>**(3) DENY DEFENDANT'S MOTION TO DISMISS (ECF No. 24);**<br><br>**(4) DENY PLAINTIFF'S MOTIONS TO DECLARE 28 U.S.C. § 1915(g) UNCONSTITUTIONAL (ECF Nos. 27 & 31);**<br><br>**(5) DENY PLAINTIFF'S MOTIONS TO STAY COLLECTION OF FILING FEES (ECF Nos. 14 & 31); AND**<br><br>**(6) DENY PLAINTIFF'S MOTION TO APPORTION FILING FEES AMONG CO-PLAINTIFFS (ECF No. 31);**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

## I.  PROCEDURAL HISTORY

Plaintiff is a federal prisoner proceeding pro se and in forma pauperis in this

Privacy Act and civil rights action. (ECF Nos. 8 & 13.) The action proceeds on Plaintiff's Privacy Act claim against the Federal Bureau of Prisons (BOP) and his First and Eighth Amendment claims against Defendant Valero. (ECF Nos. 15 & 40.) The BOP was served and has appeared in the action. (ECF Nos. 21 & 24.) The United States Marshals Service has been ordered to serve Defendant Valero but service has not yet been effectuated. (ECF No. 45.)

These findings and recommendations address the following motions:

On March 17, 2014, prior to service of the complaint, Plaintiff filed a motion to stay collection from his inmate trust account of filing fees for this action.[1] (ECF No. 14.) No opposition was filed.

On August 8, 2014, the BOP filed a motion to revoke Plaintiff's in forma pauperis status, a motion to dismiss, and a request for judicial notice. (ECF No. 24.) Plaintiff filed an opposition (ECF No. 25), and Defendant filed a reply (ECF No. 26).

On October 22, 2014, Plaintiff filed a motion to declare 28 U.S.C. § 1915(g) unconstitutional. (ECF No. 27.) Defendant filed an opposition. (ECF No. 29.) Plaintiff filed no reply.

On November 10, 2014, Plaintiff filed a "Motion for Relief under PLRA," seeking (1) to stay collection of his filing fees, (2) a declaration that 28 U.S.C. § 1915(g) is unconstitutional, and (3) to split the filing fees for this action among co-plaintiffs. (ECF No. 31.) Defendant filed an opposition. (ECF No. 33.) Plaintiff filed no reply.

These matters are deemed submitted pursuant to Local Rule 230(*l*).

## II.   DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

In relation to its motion to dismiss and motion to revoke Plaintiff's in forma pauperis status, Defendant asks the Court to take judicial notice of pleadings and orders filed in other actions initiated by Plaintiff. (ECF No. 24-2.) Plaintiff does not object to the request. (See ECF No. 25.)

---

[1] The motion also sought to identify the Doe Defendant named in Plaintiff's complaint. (ECF No. 14.) That portion of the motion was addressed by the Court in a separate order. (ECF No. 40.)

2

Federal Rule of Evidence 201(b)(2) authorizes the Court to judicially notice facts not subject to reasonable dispute, including court records, because they may be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). This includes the Court's own records. Id. Such notice is mandatory where the requesting party supplies the information to be noticed to the Court.  FRE 201(c)(2).

Judicial notice of the court records included in Defendant's request is proper. Fed. R. Evid. 201(b)(2). Accordingly, Defendant's request should be granted.

## III.   MOTION TO REVOKE PLAINTIFF'S IN FORMA PAUPERIS STATUS

On March 10, 2014, the Court granted Plaintiff's motion to proceed in forma pauperis. (ECF No. 13.) Defendant BOP seeks to revoke Plaintiff's in forma pauperis status on the ground that he has brought three or more actions that were dismissed as frivolous, malicious, or failed to state a claim, and he was not in imminent danger of serious physical injury at the time of filing. (ECF Nos. 24 & 26.) Plaintiff concedes that he has at least three "strikes" under the Prison Litigation Reform Act, but argues that he was in imminent danger at the time his complaint was filed. (ECF No. 25.)

It is undisputed that Plaintiff has incurred at least three "strikes" within the meaning of 28 U.S.C. §1915(g). (ECF Nos. 24 & 25.) See Pinson v. Armijo, 1:13-cv-01567-BNB, 2014 WL 1034992, at *1 (D. Colo. Mar. 18, 2014) (recounting Plaintiff's litigation history). Accordingly, the issue before the Court is whether Plaintiff was in imminent danger of serious physical injury at the time of filing. Andrews v. Cervantes, 493 F.3d 1047, 1055 (9th Cir. 2007).

### A.    Legal Standard

28 U.S.C. § 1915 permits a federal court to authorize the commencement and prosecution of an action without prepayment of fees by an individual who submits an affidavit demonstrating that he or she is unable to pay the fees. However,

> [i]n no event shall a prisoner bring a civil action . . . under

3

1

2

3

4

> this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

5   28 U.S.C. § 1915(g).

6       The imminent danger exception applies if "the complaint makes a plausible

7   allegation that the prisoner faced 'imminent danger of serious physical injury' at the time

8   of filing." <u>Andrews</u>, 493 F.3d at 1055.

9   **B.  Plaintiff's Complaint**

10       At the time Plaintiff initiated this action, he was incarcerated at the federal

11   Administrative Maximum Facility (ADX) in Florence, Colorado ("ADX – Florence"). He

12   since has been transferred to the Medical Center for Federal Prisoners in Springfield,

13   Missouri. His complaint concerns actions that occurred at United States Penitentiary –

14   Atwater ("USP – Atwater"), although it is unclear whether Plaintiff ever was incarcerated

15   at that facility.

16       Plaintiff's allegations may be summarized essentially as follows:

17       Plaintiff is a former member of Florencia 13, a Mexican Mafia subordinate, but

18   since has cooperated with law enforcement, debriefed, and provided testimony against

19   Florencia 13.

20       In 2010, Plaintiff and other inmates, including Mathew Eyre, filed suit against

21   BOP officials. Eyre subsequently was transferred to USP – Atwater. On July 30, 2012,

22   Defendant Valero questioned Eyre about his participation in the lawsuit, told Eyre to

23   drop the case, called Plaintiff a snitch, and revealed sensitive information from Plaintiff's

24   BOP file. Defendant Valero also stated that several prison gangs would soon know that

25   Eyre was "collaborating with rats."

26       The Mexican Mafia became aware of Defendant Valero's disclosures and

27   authorized Plaintiff's murder. Other gangs have been solicited to kill Plaintiff. Plaintiff

28   has been assaulted by prison gang members who vowed to kill him. The BOP refused

1    to investigate the matter or provide protection.

2    **C.    Parties' Arguments**

3    Defendant argues primarily that Plaintiff's allegations of imminent danger are not

4    plausible. (ECF No. 24-1 at 5-7.) Defendant notes that Plaintiff has raised the claim that

5    he is subjected to threats and assaults due to being labeled a snitch in at least seven

6    prior cases. Plaintiff raised nearly identical allegations to those in the instant action in

7    Pinson v. Doe, 7:13-cv-00134-ART (E.D. Ky. filed Nov. 20, 2013), and his motion to

8    proceed in forma pauperis in that action was denied. Defendant argues that Plaintiff has

9    a demonstrated propensity to engage in abusive litigation and to present unbelievable

10   claims. Other courts have rejected Pinson's allegations of imminent danger of serious

11   physical injury in a variety of cases.

12   Plaintiff points out that many of his prior cases cited by Defendant are irrelevant

13   to the instant action because they involve different facts. (ECF No. 25.) Other cases did

14   not address the imminent danger inquiry. Another is not final because it is pending on

15   appeal. And in still another, involving "materially identical claims," the court ruled that

16   Plaintiff was in imminent danger for purposes of 28 U.S.C. § 1915(g). Plaintiff states that

17   Defendant has offered nothing other than examples of Plaintiff's litigiousness to

18   undermine the plausibility of his allegations. Other courts have found that similar

19   allegations (raised by other Plaintiffs) satisfy the imminent danger exception.

20   In reply, Defendant argues that Plaintiff's allegations are baseless because he

21   has been repeating the same allegations of danger in multiple complaints over several

22   years. (ECF No. 26.)

23   **C.    Discussion**

24   Plaintiff alleges that gang members have vowed to kill him and that BOP refuses

25   to protect him. These claims, on their face, suggest imminent danger of serious physical

26   injury. At the pleading stage, the Court is required to accept this allegation as true.

27   Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atlantic Corp. v. Twombly,

28   550 U.S. 544, 555 (2007)).

The Court has some discretion to reject allegations that are fantastic or delusional. See Nietzke v. Williams, 490 U.S. 319, 327-28 (1989). Additionally, the Court may deny leave to proceed in forma pauperis where the claims of imminent danger are ridiculous. Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003), cited with approval in Andrews, 493 F.3d at 1057 n.11. The Court finds nothing to indicate Plaintiff's allegations are fantastic, delusional, or ridiculous. That they frequently are repeated does not make them implausible.

The cases cited by Defendant do not compel a contrary result. Plaintiff raised allegations similar to those presented here[2] in Pinson v. Prelip, No. 3:13-cv-05502, 2014 WL 1921249 (N.D. Cal. May 13, 2014); Pinson v. Doe, No. 13-cv-02059-DCB-PSOT (D. Ariz filed Dec. 6, 2013); Pinson v. Doe, No. 7:13-cv-00134-ART (E.D. Ky. filed Nov. 20, 2013); Pinson v. Prieto, No. ED CV 10-811-PSG (SP), 2011 WL 6294479 (C.D. Cal. Dec. 13, 2011); Pinson v. Miller, No. CIV-10-807-F, 2010 WL 5807299 (W.D. Okla. Dec. 30, 2010); Pinson v. Norwood, No. CV 08-2519-PSG (JLT), 2008 WL 2323895 (C.D. Cal. June 4, 2008); and Pinson v. Watkins, No. CIV-06-0323-F, 2007 WL 1394146 (W.D. Okla. May 9, 2007). However, Defendant points the Court to the ruling on Plaintiff's in forma pauperis application in only one of these cases: Pinson v. Doe, No. 7:13-cv-00134-ART.

There, Plaintiff raised nearly identical allegations to those presented here. (ECF No. 24-2 at 17-24.) The court denied him leave to proceed in forma pauperis, noting that other courts reviewing Plaintiff's "suspiciously similar (and often fraudulent filings)" have held that he faces no threat of imminent danger. (ECF No. 24-2 at 15.) In so doing, the court relied on Hobbs v. Doe, No. 5:13-CT-3279-D, 2014 WL 229343, at *3 (E.D.N.C. Jan. 21, 2014), which in turn relied on several other cases that purportedly rejected claims that Plaintiff was at risk for assault by other inmates as ADX – Florence.

---

[2] Defendant also directs the Court's attention to several cases finding Plaintiff was not in imminent danger on claims entirely unrelated to those presented here, or rulings based on specific facts indicating Plaintiff's safety was adequately protected. (ECF No. 24 at 7.) These cases are irrelevant to the determination of whether Plaintiff has alleged imminent danger in this action.

However, Plaintiff was not a party in two of the cases cited in <u>Hobbs</u>: <u>Stine v. Federal Bureau of Prisons Designation and Sentence Computation Unit</u>, No. 3:13–CV–4253–B, 2013 WL 6640391 (N.D. Tex. Dec. 17, 2013) (unpublished), and <u>Stine v. Federal Bureau of Prisons</u>, No. 10–CV–01652–BNB, 2010 WL 3276196 (D. Colo. Aug. 17, 2010) (unpublished). And, although the plaintiff in those cases, Mr. Stine, initially was a plaintiff in this action before his claims were severed (ECF No. 3) and also was involved with Plaintiff in several other actions, the Court fails to see how Mr. Stine's litigation history bears on whether Plaintiff has alleged imminent danger in this action.

Thus, only one case cited in <u>Hobbs</u> is arguably relevant: <u>Pinson v. Pacheco</u>, 397 F. App'x 488, 492 (10th Cir. 2010) (unpublished). There, however, the court denied Plaintiff a preliminary injunction, concluding he had not shown irreparable injury because (1) the incidents alleged in his complaint did not occur at the facility where he then was housed, (2) he did not allege he then was housed with inmates who posed a risk of harm to him, and (3) the court could not see how being housed in the same facility with inmates with whom Plaintiff had an unspecified history would pose a risk of harm to Plaintiff. <u>Pacheco</u> is unconvincing on the issue raised here, i.e., whether Plaintiff has alleged imminent danger sufficient to allow him to proceed in forma pauperis.

Finally, as Plaintiff points out, in at least one of the cases cited by Defendant and involving similar allegations, Plaintiff was permitted to proceed in forma pauperis on the ground that Plaintiff sufficiently alleged imminent danger. <u>Pinson v. Doe</u>, No. 13-cv-02059-DCB-PSOT (D. Ariz. Apr. 14, 2014).

**E.   Conclusion**

Defendant has presented evidence indicating that Plaintiff has a history of abusive and sometimes fraudulent litigation. However, Plaintiff nonetheless has alleged a threat of imminent danger sufficient to proceed in forma pauperis in this action. Accordingly, Defendant's motion to revoke Plaintiff's in forma pauperis status should be denied.

1    **IV.     MOTION TO DISMISS PRIVACY ACT CLAIM**

2          **A.     Legal Standards**

3                **1.     Motion to Dismiss**

4          A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency

5    of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the

6    absence of sufficient facts alleged under a cognizable legal theory. Conservation Force

7    v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011). To survive a motion to dismiss, a

8    complaint must contain sufficient factual matter, accepted as true, to state a claim to

9    relief that is plausible on its face. Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S. at

10   570); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Serv., 572 F.3d 962,

11   969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all

12   reasonable inferences in favor of the non-moving party. Daniels-Hall v. Nat'l Educ.

13   Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). Pro se litigants are entitled to have their

14   pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v.

15   Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012).

16         In resolving a 12(b)(6) motion, a court's review is generally limited to the

17   operative pleading. Daniels-Hall, 629 F.3d at 998. However, courts may properly

18   consider matters subject to judicial notice and documents incorporated by reference in

19   the pleading without converting the motion to dismiss to one for summary judgment.

20   Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 1986); Mack v. S. Bay Beer

21   Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

22               **2.     Privacy Act**

23         The Privacy Act provides a private cause of action against federal agencies for

24   violating the Act's provisions. Doe v. Chao, 540 U.S. 614, 618 (2004); 5 U.S.C.

25   § 552a(g)(1). The Privacy Act prohibits, with certain exceptions, the disclosure by an

26   agency of "any record which is contained within a system of records" without the prior

27   written consent of the individual to whom the record pertains. 5 U.S.C. § 552a(b).

28

8

A Privacy Act claim seeking money damages based on improper disclosure has four elements: (1) the disclosed information is a "record" contained with a "system of records"; (2) the agency improperly disclosed the information; (3) the disclosure was willful or intentional; and (4) the disclosure adversely affected the plaintiff. See 5 U.S.C. §§ 552a(a)(5), (g)(1)(D), (g)(4)(A); see also Lane v. Dep't of Interior, 523 F.3d 1128, 1140 & n.11 (9th Cir. 2008). However, "if a party discloses information obtained independently of any records, such a disclosure does not violate the Act, even if identical information is contained in the records." Wilborn v. Dep't of Health and Human Servs., 49 F.3d 597, 600 (9th Cir. 1995), overruled on other grounds by Doe v. Chao, 540 U.S. 614 (2004).

**B.   Screening Order**

The Court screened Plaintiff's first amended complaint and found that it stated a cognizable Privacy Act claim against BOP based on allegations that a BOP agent shared Plaintiff's inmate records with another inmate for an improper purpose, without Plaintiff's consent, and that Plaintiff suffered harm as a result. (ECF No. 15.)

**C.   Parties' Arguments**

Defendant argues that Plaintiff's complaint fails to state a Privacy Act claim because (1) Plaintiff does not allege what "sensitive information" defendant Valero revealed to Inmate Eyre; (2) Plaintiff does not specifically allege that the "sensitive information" was learned from BOP records; (3) Plaintiff does not specify the records that were compromised; (4) the information allegedly disclosed by Defendant Valero already was publicly known; (5) Plaintiff does not allege the disclosure was willful or intentional; and (6) Plaintiff does not allege he was assaulted or threated based on the sensitive information from his inmate records, rather than because he was regarded as a "snitch."

Plaintiff argues that, to the extent the complaint contains insufficient detail, Plaintiff should be granted leave to amend. (ECF No. 25.) He submits a proposed second amended complaint (ECF No. 25 at 18-21), naming as an additional defendant

an USP – Atwater employee named Estrada, and alleging that Valero and Estrada showed Inmate Eyre a copy of a cooperation agreement between Plaintiff and the AUSA and a letter outlining Plaintiff's cooperation with the government. These documents previously had not been revealed to any inmates.

Defendant argues that leave to amend would be futile and the complaint should be dismissed without leave to amend. (ECF No. 26.) Specifically, Defendant contends that the information that Plaintiff was a snitch was publicly available in multiple court documents and he therefore is unable to state a Privacy Act violation.

### D.   Analysis

Plaintiff's complaint sufficiently alleges the elements of a Privacy Act claim. The allegation that the information disclosed was "sensitive information" from Plaintiff's inmate file is sufficient to allege the disclosure of a "record" from a "system of records." The disclosure, allegedly made in the context of encouraging Inmate Eyre to drop a lawsuit and apparently without Plaintiff's prior consent, was improper and reflects intent to disclose the information. Finally, threats to Plaintiff's life, allegedly based on the disclosure, are sufficient to allege adverse effect.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Detailed factual allegations are not required. See Ashcroft, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Defendant's contention that Plaintiff was required to allege more specifically the "sensitive information" revealed and the files that were compromised is without merit. Although doing so certainly would have been preferable, the failure to do so does not warrant dismissal.

Similarly without merit is the criticism that Plaintiff failed to specifically allege Defendant Valero's conduct was willful. The facts alleged in the complaint are sufficient to create an inference that the conduct was willful.

Likewise, Plaintiff's failure to specifically allege that he was assaulted or threatened based on the sensitive information from his inmate records, rather than because he was

10

1  regarded as a snitch, does not defeat his claim. The allegations are sufficient to indicate
2  that Plaintiff may have been targeted on either or both of these bases. Plaintiff ultimately
3  may be unable to prove he suffered adverse effects from the release of information from
4  his inmate file, rather than from being labeled a snitch. However, that is not his burden
5  at this stage of the proceedings. He must only allege facts that, when accepted as true,
6  state a claim for relief. He has done so.

7          Defendant's argument that Plaintiff did not specifically allege that the information
8  was learned from BOP records also lacks merit. Defendant appears to contend that
9  Defendant Valero may have learned of the sensitive information independently of any
10 BOP records. See Wilborn, 49 F.3d at 600. Defendant is free to so prove at trial or on a
11 motion for summary judgment. However, at this stage of the proceedings, and
12 construing the complaint liberally as the Court is required to do, Wilhelm, 680 F.3d at
13 1121, Plaintiff's allegation that the information was "revealed . . . from BOP files" (ECF
14 No. 8) is sufficient to state a claim.

15         Finally, Defendant argues that there was no Privacy Act violation because it was
16 publicly known, through numerous Court records, that Plaintiff was a snitch. As an initial
17 matter, it appears from the face of the complaint that the information allegedly revealed
18 by Defendant Valero went beyond the contention that Plaintiff was a snitch.
19 Furthermore, Defendant cites no authority, certainly none from this Circuit, to support its
20 argument that information that is publicly known cannot be the subject of a Privacy Act
21 violation. Defendant cites King v. Califano, 471 F. Supp. 180 (D.D.C. 1979), in support.
22 However, the King court held only that the release of information to a person who
23 already was aware of the information does not constitute a disclosure under the Privacy
24 Act.[3] And, the interpretation of King advanced by Defendant has been rejected in at
25 least one Circuit. Quinn v. Stone, 978 F.2d 126, 134 (3d Cir. 1992) ("We doubt if any
26 court would so hold" that "there is no violation of the Act if the information is merely

27 _____

28 [3] There is nothing to indicate that Inmate Eyre was aware of any information from Plaintiff's inmate file prior to Defendant Valero's alleged disclosure.

readily accessible to the members of the public."). Thus, although the Ninth Circuit does not appear to have addressed this issue directly, the Court declines to rely on <u>King</u> to dismiss Plaintiff's claim.

### E.   Conclusion

Plaintiff's first amended complaint states a cognizable Privacy Act claim. Accordingly, Defendant's motion to dismiss should be denied. Based on this conclusion, the Court will not address Plaintiff's request to amend his complaint. If Plaintiff wishes to amend, he may bring a motion seeking same.

## V.   MOTION TO DECLARE 28 U.S.C. § 1915(g) UNCONSTITUTIONAL

Plaintiff filed a motion to declare 28 U.S.C. § 1915(g) unconstitutional to the extent it hinders his ability to bring this action. (ECF No. 27.) However, the United States Court of Appeals for the Ninth Circuit has concluded that 28 U.S.C. § 1915(g) is not unconstitutional. <u>Rodriguez v. Cook</u>, 169 F.3d 1176, 1181 (9th Cir. 1999). Further, based on the recommendation herein to deny Defendant's motion to revoke Plaintiff's in forma pauperis status, 28 U.S.C. § 1915(g) has not inhibited Plaintiff's ability to bring this action. His challenge to the constitutionality of 28 U.S.C. § 1915(g) therefore is moot, and his motion should be denied.

## VI.   MOTIONS TO STAY COLLECTION OF FILING FEES

Plaintiff has filed two motions to stay collection of filing fees in this action.[4] (ECF Nos. 14 & 31.) Plaintiff represents that he owes PLRA-imposed filing fees in seven cases, not including the present case, all of which are being collected in installments from his inmate trust fund account. Plaintiff contends that he should only be required to pay one filing fee at a time. Plaintiff presents no argument in support, but instead submits as exhibits briefing submitted on his behalf to the United States Court of Appeals for the District of Columbia Circuit regarding this issue. (ECF Nos. 14 at 2, 31 at 3.)

---

[4] Plaintiff's motion may be read to additionally seek relief with respect to Plaintiff's filing fees in other, unrelated actions. To the extent Plaintiff wishes to seek such relief, he must do so in those actions, or in a separate action. Such requests will not be addressed herein.

1  Defendant contends that Plaintiff's arguments were rejected by the D.C. Circuit,

2  and should be rejected here on the same ground. (ECF No. 33.)

3  **A.    Legal Standard**

4  Prisoners granted pauper status must make an initial partial payment at the time

5  of filing, followed by monthly installments until the filing fees are paid in full. 28 U.S.C.

6  § 1915(b). The initial filing fee is charged as follows:

7  > Notwithstanding subsection (a), if a prisoner brings a civil
> action or files an appeal in forma pauperis, the prisoner shall
8  > be required to pay the full amount of a filing fee. The court
> shall assess and, when funds exist, collect, as a partial
9  > payment of any court fees required by law, an initial partial
> filing fee of 20 percent of the greater of --
10 > (A) the average monthly deposits to the prisoner's
> account; or
11 > (B) the average monthly balance in the prisoner's
> account for the 6-month period immediately preceding
12 > the filing of the complaint or notice of appeal.

13 28 U.S.C. § 1915(b)(1).

14 After the initial partial payment, the prisoner is required to make monthly

15 payments as follows:

16 > After payment of the initial partial filing fee, the prisoner shall
> be required to make monthly payments of 20 percent of the
17 > preceding month's income credited to the prisoner's account.
> The agency having custody of the prisoner shall forward
18 > payments from the prisoner's account to the clerk of the
> court each time the amount in the account exceeds $10 until
19 > the filing fees are paid.

20 28 U.S.C § 1915(b)(2).

21 There is a split of authority as to the manner in which prisoners are required to

22 pay filing fees under § 1915(b)(2). The Second and Fourth Circuits have held that

23 § 1915(b)(2) requires that filing fees be collected sequentially, meaning that an indigent

24 prisoner may be assessed no more than 20 percent of his monthly income, regardless

25 of the number of suits filed. Whitfield v. Scully, 241 F.3d 264, 278 (2d. Cir. 2001); Torres

26 v. O'Quinn, 612 F.3d 237, 240 (4th Cir. 2010). In these Circuits, each filing fee is

27 satisfied in the order incurred.

28 The Fifth, Seventh, Eighth, Tenth, and District of Columbia Circuits have held

1   that § 1915(b)(2) requires an indigent prisoner to simultaneously pay 20 percent of his

2   monthly income toward each outstanding filing fee, even if this results in 100 percent of

3   a prisoner's monthly income being collected. <u>Atchison v. Collins</u>, 288 F.3d 177, 180-81

4   (5th Cir. 2002); <u>Newlin v. Helman</u>, 123 F.3d 429, 436 (7th Cir. 1997), <u>overruled in part</u>

5   <u>on other grounds by</u> <u>Lee v. Clinton</u>, 209 F.3d 1025 (7th Cir. 2000); <u>Lefkowitz v. Citi-</u>

6   <u>Equity Grp., Inc.</u>, 146 F.3d 609, 612 (8th Cir. 1998); <u>Christensen v. Big Horn Cnty. Bd.</u>

7   <u>of Cnty. Comm'rs</u>, 374 Fed. App'x 821, 833 (10th Cir. 2010) (unpublished); <u>Pinson v.</u>

8   <u>Samuels</u>, 761 F.3d 1, 8 (D.C. Cir. 2014). Although the Ninth Circuit has not addressed

9   this issue, District Courts within this Circuit also have required indigent prisoners to

10  simultaneously pay toward multiple filing fees. <u>Hendon v. Ramsey</u>, 478 F. Supp. 2d

11  1214, 1219 (S.D. Cal. 2007); <u>Samonte v. Frank</u>, 517 F. Supp. 2d 1238, 1243 (D. Haw.

12  2007).

13              **1.    Sequential Approach**

14          The Second Circuit has found that the "text and structure of § 1915 fail to provide

15  a definitive answer" as to whether PLRA filing fees should be collected sequentially or

16  simultaneously. <u>Whitfield</u>, 241 F.3d at 276. Indeed, the Second Circuit concluded that

17  § 1915(b)(2) plausibly could be read to require either simultaneous or sequential

18  collection of filing fees. <u>Id.</u> at 277. Nevertheless, the Second Circuit held that the statute

19  requires sequential collection of filing fees because "simultaneous collection of multiple

20  encumbrances could potentially expose 100 percent of a prisoner's income to

21  recoupment," which "arguably could pose a serious constitutional quandary as to

22  whether an unreasonable burden has been placed on the prisoner's right of meaningful

23  access to the courts." <u>Id.</u>

24          The Fourth Circuit concluded that the PLRA is silent as to the manner in which

25  filing fees should be collected. <u>Torres</u>, 612 F.3d at 244. However, the Fourth Circuit

26  interpreted the plain language of § 1915(b)(2) as imposing a 20 percent monthly ceiling

27  on the amount that may be deducted from a prisoner's account to pay for any and all

28  court fees. <u>Id.</u> at 245-46. The Court found that this interpretation comported with

1   Congressional intent and staved off grave "access to courts issue[s] of constitutional

2   dimensions." Id. at 246-48.

3                    **2.       Simultaneous Approach**

4          The Seventh Circuit noted that § 1915 "does not tell us whether the 20 percent-

5   of-income payment is per case or per prisoner." Newlin, 123 F.3d at 436. However, the

6   court concluded that multiple filing fees must be collected from an inmate's trust account

7   simultaneously because sequential collection would allow a prisoner to "file multiple

8   suits for the price of one, postponing payment of fees for later-filed suits." Id. The court

9   further noted that the PLRA was "designed to require the prisoner to bear some

10  marginal cost for each legal activity," a goal which would not be achieved "[u]nless

11  payment begins soon after the event that creates liability." Id. The Eighth Circuit also

12  adopted this approach, echoing the Seventh Circuit's statements regarding the policies

13  underlying the PLRA. Lefkowitz, 146 F.3d at 612.

14         The Fifth Circuit reached the same result, although based on a more detailed

15  review of the statutory language. Atchison, 288 F.3d at 180-81. The Fifth Circuit

16  concluded that § 1915(b)(1) and § 1915(b)(2) were meant to be read together, and

17  together unambiguously required the simultaneous collection of multiple filing fees. Id.

18  at 181. The court rejected the notion that the simultaneous approach presented

19  constitutional concerns because prisoners are not forced to choose between the

20  necessities of life and filing a lawsuit. Id.

21         The Tenth Circuit likewise has concluded that, when read as a whole, the plain

22  language of § 1915 requires the simultaneous collection of multiple filing fees.

23  Christensen, 374 Fed. App'x at 830-31. The Tenth Circuit noted that this interpretation

24  "furthers the overarching purpose of imposing the installment-payment obligations

25  uniquely on prisoners, which . . . is to reduce frivolous prisoner litigation by making all

26  prisoners seeking to bring lawsuits or appeals feel the deterrent effect created by

27  liability for filing fees." Id. at 831 (internal quotation marks and citation omitted). The

28  court acknowledged, but rejected, the constitutional concerns raised by the Second

                                              15

1  Circuit. Id. at 832.

2      The D.C. Circuit also has concluded that, "[t]aken as a whole, the language and

3  operation of § 1915 indicate that its provisions apply to each action or appeal filed by a

4  prisoner; and subsection (b)(2), governing the payment of fees in installments, is no

5  exception. Pinson, 761 F.3d at 8. The D.C. Circuit also concluded that § 1915(b)(4),

6  providing that a prisoner may not be prohibited from bringing suit based on a lack of

7  assets, along with the requirement that prison officials afford inmates adequate food,

8  clothing, shelter, and medical care, allay any constitutional concerns. Id. at 9-10. Finally,

9  the court concluded that the simultaneous approach comports with the purposes of the

10  PLRA, particularly that of deterring prisoners from filing frivolous lawsuits. Id. at 10.

11      **B.**   **Discussion**

12      It is a "fundamental canon of statutory construction that the words of a statute

13  must be read in their context and with a view to their place in the overall statutory

14  scheme." Davis v. Michigan Dep't of Treasury, 489 U.S. 803, 809 (1989). Here, the

15  language and structure of § 1915(b) indicate that the installment payment requirement

16  applies to each action or appeal filed by a prisoner, and therefore that filing fees should

17  be withdrawn from prisoner-plaintiffs' trust accounts simultaneously.

18      First, the plain language of 28 U.S.C. § 1915(b)(1) is read by this Court as calling

19  for assessment of the initial partial filing fee each time a prisoner "brings a civil action or

20  files an appeal": "[I]f a prisoner brings a civil action or files an appeal in forma pauperis,

21  the prisoner shall be required to pay the full amount of a filing fee. The court shall . . .

22  collect, as a partial payment of any court fees required by law, an initial partial filing

23  fee . . . ." 28 U.S.C. § 1915(b)(1).

24      Subsection (b)(2) immediately follows this provision and states: "[a]fter payment

25  of the initial partial filing fee, the prisoner shall be required to make monthly payments of

26  20 percent of the preceding month's income." 28 U.S.C. § 1915(b)(2) (emphasis added).

27  Because the initial filing fee required by subsection (b)(1) is here interpreted to apply on

28  a per-case basis, it follows that subsection (b)(2)'s installment provision likewise applies

16

on a per-case basis.

Other provisions of § 1915 can be read to support this interpretation. For example § 1915(a)(2) requires a prisoner to submit a certified copy of his or her trust fund account statement for the 6-month period immediate preceding the filing of the complaint or notice of appeal. Because the statement must reflect the 6-month period preceding filing, the requirement necessarily applies each time the prisoner files a complaint or notice of appeal. Additionally, Subsection (e)(2) permits the court to dismiss a case at any time if it is frivolous, malicious, or fails to state a claim. And, subsection (f)(1) allows the court to render judgment for costs "at the conclusion of the suit or action." Given that these provisions impose requirements or obligations for each civil action or appeal a prisoner files, it would be incongruous to conclude that subsection (b)(2) – and only subsection (b)(2) – imposes a global cap on monthly installment payments for <u>all</u> of the cases filed by a prisoner.

Additionally, the simultaneous approach comports with the PLRA's primary purpose. The PLRA was enacted to "curtail the extraordinary costs of frivolous prisoner suits and minimize such costs to taxpayers." <u>Rodriguez</u>, 169 F.3d at 1181. "Requiring prisoners to pay filing fees for suits will force them to go through the same thought process non-inmates go through before filing a suit, i.e., is filing this suit worth the costs?" <u>Id.</u>

Finally, simultaneous collection of multiple filing fees does not raise constitutional concerns. "Because prisoners are in the custody of the state and accordingly have the 'essentials of life' provided by the government," the simultaneous collection of filing fees does not require an indigent prisoner to "make the choice between his lawsuit and the necessities of life," even if 100% of the prisoner's monthly income is collected in filing fees. <u>See</u> <u>Taylor v. Delatoore</u>, 281 F.3d 844, 849 (9th Cir. 2002). Nor does the sequential collection of filing fees interfere with a prisoner's access to the courts. "In no event shall a prisoner be prohibited from brining a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by

1  which to pay the initial partial filing fee."28 U.S.C. § 1915(b)(4). Moreover, inmates must

2  be provided, at government expense, with "paper and pen to draft legal documents, with

3  notarial services to authenticate them, and with stamps to mail them." <u>Bounds v. Smith</u>,

4  430 U.S. 817, 824-25 (1977). Thus, even if 100% of Plaintiff's monthly income is taken

5  for the simultaneous collection of multiple filing fees, neither the necessities of life nor

6  access to the courts will be denied him.

7      **C.   Conclusion**

8      Based on the foregoing, the Court concludes that 28 U.S.C. § 1915(b)(2)

9  requires that multiple filing fees be collected simultaneously. Accordingly, Plaintiff's

10  motion to stay the collection of filing fees for this action until those for other actions are

11  satisfied should be denied.

12  **VII.   MOTION TO APPORTION FILING FEES AMONG CO-PLAINTIFFS**

13      Plaintiff asks that filing fees for this action be apportioned among co-plaintiffs and

14  that Plaintiff's filing fee obligation be reduced. (ECF No. 31.)

15      Plaintiff has no co-plaintiffs in this action. Mikeal Stine and Jeremy Brown initially

16  were plaintiffs in the action but their claims were severed. (ECF No. 3.) Accordingly,

17  there are no co-plaintiffs to whom fees may be apportioned, and Plaintiff's motion

18  should be denied.

19  **VIII.   CONCLUSION AND RECOMMENDATION**

20      Based on the foregoing, the Court finds that the court records submitted by

21  Defendant are the proper subject of judicial notice. Accordingly, it is HEREBY

22  RECOMMENDED that Defendant's request for judicial notice (ECF No. 24) be

23  GRANTED.

24      The Court further finds that Plaintiff's complaint plausibly alleged that Plaintiff

25  was in imminent danger of serious physical injury at the time of filing. Accordingly, it is

26  HEREBY RECOMMEDED that Defendant's motion to revoke Plaintiff's in forma

27  pauperis status (ECF No. 24) be DENIED. Because the Court recommends that

28  Defendant's motion to revoke Plaintiff's in forma pauperis status be denied, it is

1 | FURTHER RECOMMENDED that Plaintiff's motions to declare 28 U.S.C. § 1915(g)
2 | unconstitutional (ECF Nos. 27 & 31) be DENIED as moot.

3 |      The Court also finds that Plaintiff's complaint states a cognizable Privacy Act
4 | claim against Defendant BOP. Accordingly, it is HEREBY RECOMMENDED that
5 | Defendant's motion to dismiss (ECF No. 24) be DENIED.

6 |      The Court further finds that 28 U.S.C. § 1915(b)(2) requires that multiple filing
7 | fees be collected simultaneously. Accordingly, it is HEREBY RECOMMENDED that
8 | Plaintiff's motions to stay collection of filing fees (ECF Nos. 14 & 31) be DENIED.

9 |      Finally, Plaintiff has no co-plaintiffs in this action, and it is HEREBY
10 | RECOMMENDED that his motion to apportion filing fees among co-plaintiffs (ECF No.
11 | 31) be DENIED.

12 |      The findings and recommendations will be submitted to the United States District
13 | Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).
14 | Within fourteen (14) days after being served with the findings and recommendations,
15 | the parties may file written objections with the Court. The document should be
16 | captioned "Objections to Magistrate Judge's Findings and Recommendations." A party
17 | may respond to another party's objections by filing a response within fourteen (14) days
18 | after being served with a copy of that party's objections. The parties are advised that
19 | failure to file objections within the specified time may result in the waiver of rights on
20 | appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v.
21 | Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   February 20, 2015      /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28