UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY PINSON,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS;<br>JESUS VALERO,<br><br>    Defendants. | Case No.  1:13-cv-01821-AWI-MJS (PC)<br><br>**ORDER SETTING EVIDENTIARY HEARING**<br><br>**9:00 AM**<br>**OCTOBER 15, 2015**<br>**COURTROOM 6**<br>**FRESNO** |

## I. Introduction

Plaintiff is a federal prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and the Privacy Act of 1974, 5 U.S.C. § 552a. The matter proceeds on Plaintiff's First Amended Complaint against Defendant Jesus Valero for violations of the First and Eighth Amendments and against Defendant Federal Bureau of Prisons ("BOP") for violation of the Privacy Act.

In the operative pleading, Plaintiff claims that he and a number of other inmates,

including Matthew Eyre,[1] are involved in an appeal in a lawsuit against high-ranking BOP officials in the United States Court of Appeals for the District of Columbia Circuit ("the D.C. Case"). The conduct giving rise to the action filed in this Court occurred at United States Penitentiary in Atwater, California ("USP-Atwater"), a facility at which Plaintiff has never been housed. Plaintiff accuses Valero, then a Special Investigative Agent at USP-Atwater, of telling Eyre to cease participation in the D.C. Case, identifying Plaintiff as a "notorious snitch," and revealing "sensitive information" about Plaintiff from his BOP file. Plaintiff also accuses Valero of telling Eyre that several prison gangs would soon know that Eyre was "collaborating with rats." Plaintiff claims that, as a result of Valero's conduct, Eyre stopped participating in the D.C. Case, and Plaintiff is now targeted by prison gangs and has been assaulted.

On April 17, 2015, Defendants filed a Motion for Summary Judgment premised on the following grounds: (1) Plaintiff failed to exhaust his administrative remedies as to Valero, (2) Valero is entitled to qualified immunity, and (3) Plaintiff fails to state a cognizable First Amendment claim. (ECF No. 58.)

Plaintiff filed an Opposition on May 4, 2015 (ECF No. 59), and Defendants filed a Reply. (ECF No. 60.) Plaintiff then filed a Sur-Reply (ECF No. 62), and Defendants filed a second Reply (ECF No. 62).

## II.     **Dispute Regarding Authenticity Of Matthew Eyre's Declaration**

The parties have presented irreconcilably conflicting evidence from and about witness Eyre as follows:

A.  In support of their motion, Defendants submit a declaration signed by Valero stating that he (1) had never heard of an inmate by the name of Jeremy Pinson; (2) was not aware of any lawsuit filed by Pinson; (3) never discussed Pinson or any lawsuits with Matthew Eyre; (4) never referred to Pinson as a notorious snitch; (5) never told Matthew Eyre that any gang members would soon know

---

[1] Eyre is scheduled to be released from the United States Penitentiary in Beaumont, Texas on October 22, 2015 via Good Conduct Time. (Decl. of Matthew Eyre ¶ 1, ECF No. 60-1.)

1     that he was "collaborating with rats"; and (6) never disclosed any information,

2     sensitive or otherwise, to Matthew Eyre, about Pinson from any Bureau of

3     Prisons files.

4 B. In his Opposition, Plaintiff submits an undated declaration purportedly signed by

5     Eyre (ECF No. 59 at 11), in which Eyre states:

6 - "…Valero …showed me a Dec. 2008 letter wrote [sic] by AUSA Mike

7     Schultz that revealed Pinson's cooperation with law officers.";

8 - "…Valero said if I kept helping Pinson in the D.C. case fellow gang

9     members would be told I was collaborating with notorious rats.";

10 - "I stopped participating in the D.C. case out of fear I would be labeled a

11     snitch."; and

12 - "Pinson has helped prepare this declaration but I will declare to its

13     truthfulness."

14 C. In their Reply, Defendants accuse Plaintiff of submitting a false, and impliedly

15     forged, declaration in Eyre's name. Defendants then submit a more recent Eyre

16     declaration dated May 8, 2015, with a different signature than on the declaration

17     submitted by Plaintiff. (ECF No. 60-1). In this declaration, Eyre states:

18 - "[The declaration submitted by Plaintiff] was not drafted by me. I never

19     authorized Jeremy Pinson or anyone to draft such a declaration on my

20     behalf. Furthermore, the signature at the bottom of the document is not

21     mine."

22 - "Jesus Valero…never discussed Jeremy Pinson with me while I was

23     incarcerated at USP Atwater nor did [he] show me any documentation,

24     sensitive or otherwise, indicating Jeremy Pinson ever cooperated with law

25     enforcement. This is the first time I am ever hearing about any such

26     records."

27 - "The declaration alleges that I stopped participating in a D.C. case out of

28     fear that Jesus Valero…would label me a snitch. This allegation is false.

        Jesus Valero…never confronted me on any case involving Pinson."

- "Moreover, I never wanted nor agreed to participate in a lawsuit pending in the District of Columbia. Jeremy Pinson listed me as an appellant, but I did not respond to the Court's Order to join the case because I wanted nothing to do with it. My decision not to join the litigation had nothing to do with fear that Jesus Valero … would label me a snitch if I did."
- "…I never gave Jeremy Pinson permission to use my name in this lawsuit nor did I give him permission to draft a declaration on my behalf and to sign my name to it."

    D.    In his Sur-Reply, Plaintiff submits a declaration signed by Kendra Chavo-Perez, who states that she "handle[s] mail in legal or business matters" for Plaintiff; that she "personally sent to Mr. Eyre and received back from him with his signature the declaration which was forwarded to Mr. Pinson; and that she "did not personally see Mr. Eyre sign it however when it was sent to him for his signature it was mailed directly to him, and when it was returned to me it arrived in a prison envelope with Mr. Eyre's return address." (ECF No. 61.) Chavo-Perez does not include a copy of the envelope sent to Matthew Eyre or the envelope received back from him.

## III.    Analysis; Future Proceedings

Either Mr. Eyre has given inconsistent statements and he is being untruthful in at least one of them or one of his statements is forged. Resolution of the conflict will go to the very merits of this case and will produce severe sanctions if, as appears, there is knowing falsity here. Accordingly, before proceeding further, the Court will resolve the conflict as follows:

Unless Plaintiff elects to repudiate and withdraw the Eyre declaration that Plaintiff submitted with his opposition, ECF No. 59 at 11, an evidentiary hearing will be held at 9:00 AM, Friday, October 15, 2015, in Courtroom 6 of this Court. The Court will make arrangements for Plaintiff and witness Eyre to appear by video conference. If Plaintiff

wishes to have Kendra Chavo-Perez testify, it is his responsibility to notify her of the time, place and date of the hearing and arrange for her appearance at his or her own expense. A failure to have her present could lead to an inference that her testimony would not support the Plaintiff.

At the hearing, the Court will take evidence regarding the Eyre declarations, their manner of preparation, execution, mailing, return and submission, and determine which, if either, is valid.  The Court also will consider whether sanctions should be imposed against any party or witness for misrepresentation to the Court, forgery, or other sanctionable conduct in connection with the foregoing.

In this regard, federal courts have broad powers to impose sanctions against parties or counsel for improper conduct in litigation. The Court derives the power to impose sanctions on parties or their counsel from three primary sources of authority, "(1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings, and (3) the court's inherent power." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001). Under Rule 11(c)(3), the Court may, on its own motion, order a hearing to show cause why conduct by a party has not violated Rule 11.

Presenting fraudulent declarations to the court is a serious offense. If the court finds that a party has submitted a fraudulent document, the court may dismiss the case. See Fed. R. Civ. P. 41(b); Fed. R. Civ. P. 56(e). Similarly, any party presenting an affidavit or declaration in bad faith may be guilty of contempt and ordered to pay the opposing party's attorney fees and expenses. See Fed. R. Civ. P. 56(h). Indeed, such misconduct may trigger severe criminal penalties for either a party or a witness. See 18 USC § 1623 (a person who makes a knowingly false material declaration to a court is subject to a fine, five years in prison or both).

In light of the dispute concerning the authenticity of the declaration submitted by Plaintiff, IT IS HEREBY ORDERED that:

1. An evidentiary hearing shall be convened on October 15, 2015, at 9:00 a.m. in Courtroom 6, Fresno, before the undersigned;
2. The Clerk's Office shall fax a copy of this Order to the Litigation Coordinator at Florence High United States Penitentiary in Florence, Colorado, where Plaintiff is presently housed; and,
3. The parties may submit briefs on the issues presented provided they are received by the Court at least ten days before the date of the hearing.

IT IS SO ORDERED.

Dated:   August 18, 2015          /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE